**CASE BEING CONSIDERED FOR TREATMENT PURSUANT TO RULE 34(j) OF THE COURT'S RULES**

# In the United States Court of Appeals for the District of Columbia Circuit

No. 17-5208
_____

GREGORY R. SWECKER & BEVERLY F. SWECKER,
*Plaintiffs-Appellants*,

v.

FEDERAL ENERGY REGULATORY COMMISSION,
*Defendant-Appellee.*
_____

ON APPEAL FROM AN ORDER OF THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
_____

## BRIEF OF DEFENDANT-APPELLEE FEDERAL ENERGY REGULATORY COMMISSION
_____

James P. Danly
General Counsel

Robert H. Solomon
Solicitor

Anand R. Viswanathan
Attorney

For Respondent Federal
 Energy Regulatory Commission
Washington, D.C. 20426

CORRECTED FINAL BRIEF: OCTOBER 10, 2018

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

A.    Parties and Amici

Plaintiffs-Appellants' Circuit Rule 28(a)(1) certificate identifies Midland

Power Cooperative and Central Iowa Power Cooperative as Defendants-Appellees,

but these entities are no longer part of this appeal because this Court granted their

motion for summary affirmance.  No. 17-5208 (D.C. Cir. May 9, 2018).  With that

clarification, the parties before this Court are identified in Appellants' certificate.

B.    Ruling Under Review

*Swecker v. Midland Power Coop.*, 253 F. Supp. 3d 274 (D.D.C. 2017),
JA 43-51.

C.    Related Cases

This Court previously granted a FERC motion to dismiss a petition for

review filed by the Sweckers for lack of jurisdiction.  *Swecker v. FERC*, No. 06-

1170 (D.C. Cir. Oct. 3, 2006).

In 2015, the Eighth Circuit affirmed dismissal (for failure to state a claim) of

a complaint filed in U.S. District Court (S.D. Iowa) by the Sweckers against

Midland Power Cooperative and Central Iowa Power Cooperative that alleged

violations of the Public Utility Regulatory Policies Act of 1978.  *Swecker v.*

*Midland Power Coop.*, 807 F.3d 883, 883-84 (8th Cir. 2015), *cert. denied*, 136

S. Ct. 990 (2016).

Two appeals are currently pending in the Eighth Circuit as to actions between the Sweckers and the United States related to foreclosure proceedings and loans provided by the U.S. Department of Agriculture's Farm Services Agency. *See Swecker v. United States*, No. 4:17-cv-00195 (S.D. Iowa Nov. 28, 2017) (action dismissed for failure to state a claim), *appeal pending*, 8th Cir. No. 18-1243; *United States v. Swecker*, No. 4:09-cv-00013 (S.D. Iowa Nov. 10, 2016) (granting United States motion for summary judgment), *appeal pending*, 8th Cir. No. 18-1007.

Counsel for Respondent Federal Energy Regulatory Commission is not aware of any other pending related cases.

*/s/ Anand R. Viswanathan*
Anand R. Viswanathan
Attorney

October 10, 2018

## **TABLE OF CONTENTS**

**PAGE**

STATEMENT OF THE ISSUES .........................................................................1

STATUTES AND REGULATIONS.................................................................2

STATEMENT OF FACTS .................................................................................3

I.     STATUTORY AND REGULATORY BACKGROUND .......................3

II.    THE SWECKERS' HISTORY OF LITIGATION .................................5

SUMMARY OF ARGUMENT.......................................................................9

ARGUMENT………...........................................................................................10

I.     STANDARD OF REVIEW ..................................................................10

II.    THE SWECKERS DO NOT CHALLENGE THE DISTRICT
COURT'S FINDING THAT THE COMMISSION'S DECISION NOT
TO ACT IS NONJUSTICIABLE..........................................................12

III.   THE SWECKERS HAVE NO CAUSE OF ACTION AGAINST FERC
UNDER PURPA..................................................................................17

CONCLUSION………........................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**COURT CASES:**                                                                 **PAGE**

*Alexander v. Sandoval*,
    532 U.S. 275 (2001) ....................................................................... 18, 19

*Anglers Conservation Network v. Pritzker*,
    809 F.3d 664 (D.C. Cir. 2016) .............................................. 15

*Balt. Gas & Elec. Co. v. FERC*,
    252 F.3d 456 (D.C. Cir. 2001) ..................................... 4, 12, 13

*Citizens For Responsibility & Ethics in Wash. v. FEC*,
    892 F.3d 434 (D.C. Cir. 2018) ......................................... 12, 14

*Conn. Valley Elec. Co. v. FERC*,
    208 F.3d 1037 (D.C. Cir. 2000) ........................................... 15

*Croley v. Joint Comm. on Judicial Admin.*,
    895 F.3d 22 (D.C. Cir. 2018) ........................................... 10-11

*El Paso Nat. Gas Co. v. United States*,
    750 F.3d 863 (D.C. Cir. 2014) .............................................. 10

*Estelle v. Gamble*,
    429 U.S. 97 (1976)............................................................. 11

*FERC v. Mississippi*,
    456 U.S. 742 (1982)............................................................. 3

*Gulf Coast Mar. Supply, Inc. v. United States*,
    867 F.3d 123 (D.C. Cir. 2017) .............................................. 11

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*,
    530 U.S. 1 (2000)................................................................ 18

*\*Heckler v. Chaney*,
    470 U.S. 821 (1985)...................................... 2, 4, 9, 10, 12, 13

_____

\*  Cases chiefly relied upon are marked with an asterisk.

iv

## <u>TABLE OF AUTHORITIES</u>

**COURT CASES:**                                                       **PAGE**

*In re: Swine Flu Immunization Prod. Liab. Litig.*,
    880 F.2d 1439 (D.C. Cir. 1989) .............................................................. 11

*\*Indus. Cogenerators v. FERC*,
    47 F.3d 1231 (D.C. Cir. 1995) .................................... 4, 13-14, 15, 19, 20

*Johnson v. Comm'n on Presidential Debates*,
    869 F.3d 976 (D.C. Cir. 2017) .............................................................. 10

*Kaemmerling v. Lappin*,
    553 F.3d 669 (D.C. Cir. 2008) .............................................................. 11

*Loughrin v. United States*,
    134 S. Ct. 2384 (2014) ................................................................... 19-20

*Midland Power Coop. v. FERC*,
    774 F.3d 1 (D.C. Cir. 2014) .................................................................. 5

*Newspaper Ass'n of Am. v. Postal Regulatory Comm'n*,
    734 F.3d 1208 (D.C. Cir. 2013) .............................................................. 16

*Niagara Mohawk Power Corp. v. FERC*,
    117 F.3d 1485 (D.C. Cir. 1997) ..................................................... 17, 20

*Niagara Mohawk Power Corp. v. FERC*,
    306 F.3d 1264 (2d Cir. 2002) .............................................................. 19

*N.Y. State Elec. & Gas Corp. v. FERC*,
    117 F.3d 1473 (D.C. Cir. 1997) .............................................................. 15

*Russello v. United States*,
    464 U.S. 16 (1983)............................................................................. 20

*S. Cal. Edison Co. v. FERC*,
    443 F.3d 94 (D.C. Cir. 2006) .................................................................. 3

*Sec'y of Labor v. Twentymile Coal Co.*,
    456 F.3d 151 (D.C. Cir. 2006) .............................................................. 13

*Settles v. U.S. Parole Comm'n*,
    429 F.3d 1098 (D.C. Cir. 2005) .............................................................. 11

v

## <u>TABLE OF AUTHORITIES</u>

**COURT CASES:**                                                    **PAGE**

*Sierra Club v. Jackson*,
    648 F.3d 848 (D.C. Cir. 2011) ..........................4, 9, 10, 11, 12, 14-15, 17

*Stovic v. R.R. Retirement Bd.*,
    826 F.3d 500 (D.C. Cir. 2016) ............................................................20

*Swecker v. FERC*,
    No. 06-1170 (D.C. Cir. Oct. 3, 2006) ............................................5-6, 12

*Swecker v. Midland Power Coop.*,
    253 F. Supp. 3d 274 (D.D.C. 2017)......................2, 5, 6, 8, 12, 13, 15, 16

*Swecker v. Midland Power Coop.*,
    807 F.3d 883 (8th Cir. 2015) ..................................................................5

*Swecker v. United States*,
    No. 4:17-cv-00195 (S.D. Iowa Nov. 28, 2017)....................................5, 6

*Touche Ross & Co. v. Redington*,
    442 U.S. 560 (1979).......................................................................18-19

*Tramont Mfg., LLC v. NLRB*,
    890 F.3d 1114 (D.C. Cir. 2018) ..........................................................16

*Xcel Energy Servs. Inc. v. FERC*,
    407 F.3d 1242 (D.C. Cir. 2005) ..........................................................20


**ADMINISTRATIVE CASES:**                                          **PAGE**

*Policy Statement Regarding the Commission's Enforcement Role Under
Section 210 of the Public Utility Regulatory Policies Act of 1978*,
    23 FERC ¶ 61,304 (1983) ...................................................................16

*Swecker v. Midland Power Coop.*,
    136 FERC ¶ 61,085 (2011) ................................................................6, 7

*Swecker v. Midland Power Coop.*,
    142 FERC ¶ 61,207 (2013) ................................................................6, 7

## TABLE OF AUTHORITIES

**ADMINISTRATIVE CASES:**                      **PAGE**

*Swecker v. Midland Power Coop.*,
    147 FERC ¶ 61,114 (2014) ................................................................. 6, 7

*Swecker v. Midland Power Coop.*,
    149 FERC ¶ 61,236 (2014) ................................................................. 7

*Swecker v. Midland Power Coop.*,
    155 FERC ¶ 61,237 (2016) ................................................................. 7

*Swecker v. Midland Power Coop.*,
    162 FERC ¶ 61,072 (2018) ................................................................. 7

**STATUTES:**

Administrative Procedure Act
    5 U.S.C. § 701(a)(2) ................................................................. 2, 4, 12, 17

Public Utility Regulatory Policies Act of 1978
    16 U.S.C. § 796(17)(A)(i)-(ii) ................................................................. 3

    16 U.S.C. § 824a-3 ................................................................. 5

    16 U.S.C. § 824a-3(a) ................................................................. 3, 5

    16 U.S.C. § 824a-3(b) ................................................................. 3

    16 U.S.C. § 824a-3(d) ................................................................. 3

    16 U.S.C. § 824a-3(h)(2) ......................................... 3, 4, 13, 14, 17, 19, 20

    16 U.S.C. § 824a-3(m)(3) ................................................................. 14

    16 U.S.C. § 824a-3(m)(7) ................................................................. 14

**SECONDARY SOURCES:**

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012).. ................................................................. 14, 20

# <u>GLOSSARY</u>

| | |
|---|---|
| APA | Administrative Procedure Act |
| Br. | Opening brief of Plaintiffs-Appellants Gregory R. Swecker and Beverly F. Swecker |
| Commission or FERC | Federal Energy Regulatory Commission |
| Op. | *Swecker v. Midland Power Coop.*, 253 F. Supp. 3d 274 (D.D.C. 2017), JA 43-51 |
| PURPA | Public Utility Regulatory Policies Act of 1978 |

# In the United States Court of Appeals for the District of Columbia Circuit

No. 17-5208

_____

GREGORY R. SWECKER & BEVERLY F. SWECKER,
*Plaintiffs-Appellants*,

v.

FEDERAL ENERGY REGULATORY COMMISSION,
*Defendant-Appellee*.

_____

ON APPEAL FROM AN ORDER OF THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

_____

## BRIEF OF DEFENDANT-APPELLEE
## FEDERAL ENERGY REGULATORY COMMISSION

_____

## STATEMENT OF THE ISSUES

This case concerns a presumptively unreviewable agency decision not to act—under a substantive statute that provides no guidelines for the agency to follow on when it should or should not act. That statute, the Public Utility Regulatory Policies Act of 1978 ("PURPA"), gives the Federal Energy Regulatory Commission ("the Commission" or "FERC") the option of bringing an enforcement action if asked to do so.

Its decision here not to bring such an action is presumed immune from judicial review under 5 U.S.C. § 701(a)(2), as the Supreme Court has long held. *See, e.g.*, *Heckler v. Chaney*, 470 U.S. 821, 830-32 (1985).  The district court found that the Sweckers had not rebutted that presumption and dismissed their complaint.  *Swecker v. Midland Power Coop.*, 253 F. Supp. 3d 274, 280 (D.D.C. 2017) ("Op."), JA 50-51.

The issues on appeal are:

1.    Whether the district court correctly found that the Sweckers had not rebutted the presumption that the agency decision not to act is unreviewable, when they have not challenged that finding in this Court; and

2.    Whether the Sweckers have a cause of action against FERC in district court under a provision of PURPA that allows actions against two potential defendants, neither of which is FERC.

## STATUTES AND REGULATIONS

Pertinent statutory and regulatory provisions are contained in the Addendum to this Brief.

2

## STATEMENT OF FACTS

## I.    STATUTORY AND REGULATORY BACKGROUND

Congress enacted the Public Utility Regulatory Policies Act of 1978 as part

of a package of legislation called the National Energy Act to combat a nationwide

energy crisis and promote the development of alternative energy resources. *FERC*

*v. Mississippi*, 456 U.S. 742, 745 (1982).  To "counter traditional electric utilities'

reluctance to deal with" renewable sources of energy, PURPA charges the

Commission "with implementing mandatory purchase and sell obligations,

requiring electric utilities to purchase electric power from, and sell power to,

qualifying cogeneration and small power production facilities (collectively,

'qualifying facilities')."  *S. Cal. Edison Co. v. FERC*, 443 F.3d 94, 95 (D.C. Cir.

2006) (citing 16 U.S.C. § 824a-3(a)(1)-(2)); *see also* 16 U.S.C. § 796(17)(A)(i)-(ii)

(facility that generates no more than 80 megawatts of power from renewable

resources is a PURPA qualifying facility).  In addition to the mandatory purchase

requirement, the statute also imposes requirements on the price at which such

purchases must be made.  *Id.* §§ 824a-3(b), 824a-3(d); *see also S. Cal. Edison*, 443

F.3d at 96 (explaining PURPA's "avoided cost" rate).

Section 210(h) of PURPA, 16 U.S.C. § 824a-3(h), sets forth the means for

enforcement of these rules.  Under that subsection, a private party seeking to

enforce a nonregulated electric utility's compliance with PURPA must first

petition FERC to do so. *See, e.g.*, *Indus. Cogenerators v. FERC*, 47 F.3d 1231, 1234 (D.C. Cir. 1995). If FERC does not initiate an enforcement action within the statutory 60-day time period, the petitioning party may itself initiate an action in federal district court against a state regulatory authority or a nonregulated utility. 16 U.S.C. § 824a-3(h)(2)(B); *see also Indus. Cogenerators*, 47 F.3d at 1234. The only role prescribed in the statute for the Commission in such a district court action is a voluntary intervenor "as a matter of right." *See* 16 U.S.C. § 824a-3(h)(2)(B).

The judicial review provisions of the Administrative Procedure Act ("APA") establish a cause of action for parties adversely affected either by agency action or by an agency's failure to act. *Heckler v. Chaney*, 470 U.S. 821, 828 (1985); *Sierra Club v. Jackson*, 648 F.3d 848, 855 (D.C. Cir. 2011). But the APA expressly removes from judicial review those agency actions that are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Such actions are unreviewable because "the courts have no legal norms pursuant to which to evaluate the challenged action, and thus no concrete limitations to impose on the agency's exercise of discretion." *Sierra Club*, 648 F.3d at 855 (internal quotation marks omitted). In cases that involve agency decisions not to take action, this Court "begin[s] with the presumption that the agency's action is unreviewable." *Id*. (citing *Chaney*, 470 U.S. at 831-32); *see also Balt. Gas & Elec. Co. v. FERC*, 252 F.3d 456, 458-59 (D.C. Cir. 2001).

## II.    THE SWECKERS' HISTORY OF LITIGATION

Appellants Gregory and Beverly Swecker own and operate a small wind facility in Iowa that generates electricity.  Op. 1, JA 43.  This facility has been classified since 1999 as a "qualifying facility" under section 210 of PURPA, 16 U.S.C. § 824a-3.  Op. 3, JA 45 (citing Compl. ¶ 10, JA 3); *Midland Power Coop. v. FERC*, 774 F.3d 1, 2 (D.C. Cir. 2014).  Under PURPA, the Sweckers sell excess power from their wind turbine to Midland Power Cooperative, an electric utility in Greene County, Iowa.  16 U.S.C. § 824a-3(a); Op. 3, JA 45 (citing Compl. ¶ 12, JA 3).  Midland buys the rest of its electricity from Central Iowa Power Cooperative ("Central Iowa").  Op. 3, JA 45 (citing Compl. ¶¶ 13-15, JA 3-4).

This appeal is but the latest in a series of lawsuits the Sweckers have initiated over many years against Midland and others in state and federal courts over the proper calculation of rates (avoided cost price for electricity sales) and their rights under PURPA, among other issues.  *See, e.g.*, Op. 3, JA 45; *Swecker v. Midland Power Coop.*, 807 F.3d 883, 883-84 (8th Cir. 2015) (affirming dismissal for failure to state a claim), *cert. denied*, 136 S. Ct. 990 (2016); *Swecker v. United States*, No. 4:17-cv-00195, ECF No. 34, slip op. 2-3 (S.D. Iowa Nov. 28, 2017) (dismissing for failure to state a claim and citing over 20 cases involving the Sweckers since 1997 in state and federal courts); *see also Swecker v. FERC*, No. 06-1170 (D.C. Cir. Oct. 3, 2006) (granting FERC motion to dismiss because

5

FERC's "refusal to initiate an enforcement action is not reviewable"). Along with dismissing one of the Sweckers' recent complaints, the U.S. District Court for the Southern District of Iowa also issued an order admonishing them for "a pattern of blatant disregard for the time and resources of the courts and of their opposing parties" through their "abusive and vexatious filings." *Swecker*, No. 4:17-cv-00195, ECF No. 35 (S.D. Iowa Nov. 28, 2017) (imposing "protective measures"). The order requires the Sweckers to seek leave from the court prior to filing any new action there.

The Sweckers have also "repeatedly, and unsuccessfully, petitioned FERC" to initiate enforcement actions against Midland and Central Iowa. Op. 3, JA 45 (citing FERC orders declining to act). In these petitions, the Sweckers alleged that Midland owes them a higher rate under PURPA, among other claims. *See, e.g.*, Pet. For Enforcement, FERC No. EL14-9, *et al.*, at 6-7 (Apr. 8, 2016) ("April 2016 Pet."), JA 115-16. They have demanded both damages and declaratory relief that Midland owes them the same rate that it pays its supplier, Central Iowa. *See, e.g.*, Pet. For Enforcement, FERC No. EL14-9, *et al.* (Mar. 24, 2016), JA 122-26; April 2016 Pet. at 7, JA 116; *see also Swecker v. Midland Power Coop.*, 142 FERC ¶ 61,207, at P 11 (2013), JA 62; *Swecker v. Midland Power Coop.*, 147 FERC ¶ 61,114, at P 1 (2014), JA 54; *Swecker v. Midland Power Coop.*, 136 FERC

¶ 61,085, at P 1 (2011), JA 78.  They also have asked the Commission to order Midland and Central Iowa to provide them with certain cost data.

In response, the Commission repeatedly has declined to initiate enforcement actions on their behalf.  *See Swecker v. Midland Power Coop.*, 162 FERC ¶ 61,072 (2018), JA 52; *Swecker v. Midland Power Coop.*, 155 FERC ¶ 61,237 (2016), JA 53; *Swecker v. Midland Power Coop.*, 149 FERC ¶ 61,236, at P 4 (2014), JA 57; *Swecker v. Midland Power Coop.*, 147 FERC ¶ 61,114, at P 2, JA 55; *Swecker v. Midland Power Coop.*, 142 FERC ¶ 61,207, at P 2, JA 59; *Swecker v. Midland Power Coop.*, 136 FERC ¶ 61,085, at P 2, JA 78.  In so declining to act, the Commission has confirmed that, under section 210(h)(2) of PURPA, the Sweckers "may themselves bring an enforcement action against Midland and [Central Iowa] in the appropriate court."  *See, e.g.*, *Swecker*, 162 FERC ¶ 61,072, at P 2, JA 52.

After FERC declined to take enforcement action on the Sweckers' 2016 petitions, they filed the complaint in the U.S. District Court for the District of Columbia that commenced the proceeding now before this Court.  Swecker Compl., Case No. 1:16-cv-01434 (D.D.C. July 11, 2016), JA 1-14.  This complaint named not just Midland and Central Iowa as defendants, but also FERC.  *Id*. ¶¶ 6-8, JA 3.  And as with the Sweckers' prior FERC petitions, the complaint demanded both damages and injunctive relief against Midland and Central Iowa to recover a

7

higher rate for Midland's purchases of energy from the Sweckers' facility. *See id.* ¶¶ 61, 71-74, JA 10, 12. The complaint again demanded data from Midland and Central Iowa to verify their costs. As to the Commission, the Sweckers alleged that the agency "knowingly and willingly" failed to enforce its regulations. *Id.* ¶ 60, JA 10.

The district court, on May 17, 2017, granted motions to dismiss filed by Midland, Central Iowa, and the Commission. The court concluded that the Sweckers failed to meet their burden to show that it had personal jurisdiction over Midland and Central Iowa. Op. 6, JA 48. The Sweckers also failed to overcome the presumption that FERC's decision not to initiate an enforcement action was unreviewable. *Id.* 8-9, JA 50-51. That decision was committed to agency discretion by law, and the court found that it lacked subject matter jurisdiction to review it. *Id.* 9, JA 51. The court subsequently denied the Sweckers' Rule 59(e) motion for reconsideration of the dismissal order, as they identified neither any change in controlling law nor new evidence justifying relief. Minute Order, Case No. 16-cv-01434 (D.D.C. July 10, 2017).

This appeal followed. While this Court initially dismissed the appeal as untimely, it later vacated that dismissal order and granted the Sweckers' request for rehearing "in light of appellants' evidence that they tendered their notice of appeal to the district court within the applicable deadline." *Swecker v. Midland Power*

8

*Coop.*, No. 17-5208 (D.C. Cir. Feb. 6, 2018). This Court later granted Midland's and Central Iowa's motion for summary affirmance, leaving FERC as the sole remaining appellee, because the Court agreed that the Sweckers failed to make a prima facie showing of personal jurisdiction over the utilities. No. 17-5208 (D.C. Cir. May 9, 2018).

## SUMMARY OF ARGUMENT

Can a court review an agency decision not to act under a statutory provision that places no limits and provides no guidelines on the agency's exercise of discretion? The answer to that question here is no, according to both the Supreme Court and this Court.

When it comes to agency decisions not to enforce, this Court "begin[s] with the presumption that the agency's action is unreviewable." *Sierra Club*, 648 F.3d at 855 (citing *Chaney*, 470 U.S. at 831-32). To be sure, that presumption (like any presumption) can be overcome.

The Sweckers did not overcome it here, as the district court concluded. And rightly so: The Commission's choice not to initiate an enforcement action was permitted under the substantive statute (PURPA). PURPA says nothing at all about whether the agency should (let alone must) commence enforcement action. Because of how Congress chose to draft this statute, courts have neither any "meaningful standard against which to judge the agency's exercise of discretion,"

*Chaney*, 470 U.S. at 830, nor any "concrete limitations to impose" on that exercise of discretion, *Sierra Club*, 648 F.3d at 855 (internal quotation marks omitted).

And the Sweckers never alleged that the Commission declined action out of mistaken belief as to its own jurisdiction; nor did they allege that FERC did so based on a policy amounting to an abdication of its statutory responsibilities. With that record, and under this statute, the district court correctly found the Commission's decision not to take action was nonjusticiable.

But the Sweckers do not challenge that finding. This defect alone, even with the traditional solicitude for pro se litigants, warrants affirmance.

Even if this appeal is subject to judicial review, this Court still should affirm because PURPA section 210(h) does not permit a cause of action against FERC.

## ARGUMENT

## I.   STANDARD OF REVIEW

This Court reviews de novo a district court's dismissal of an action for want of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or for failure to state a claim under Rule 12(b)(6). *See, e.g.*, *Johnson v. Comm'n on Presidential Debates*, 869 F.3d 976, 980 (D.C. Cir. 2017); *El Paso Nat. Gas Co. v. United States*, 750 F.3d 863, 874 (D.C. Cir. 2014). Pro se complaints "must be 'liberally construed' and 'held to less stringent standards than formal pleadings drafted by lawyers.'" *Croley v. Joint Comm. on Judicial Admin.*, 895 F.3d 22, 25

(D.C. Cir. 2018) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  While

review of a motion to dismiss a complaint requires the Court to take as true all

well-pled factual allegations, it also obligates the Court "to disregard any legal

conclusions, legal contentions couched as factual allegations, and unsupported

factual allegations within the complaint."  *Gulf Coast Mar. Supply, Inc. v. United

States*, 867 F.3d 123, 128 (D.C. Cir. 2017); *see also Kaemmerling v. Lappin*, 553

F.3d 669, 677 (D.C. Cir. 2008) ("Even given the special liberality with which we

consider pro se complaints, we need not accept inferences unsupported by the facts

alleged in the complaint or legal conclusions cast in the form of factual

allegations.") (internal quotation marks omitted); *Settles v. U.S. Parole Comm'n*,

429 F.3d 1098, 1106 (D.C. Cir. 2005) (noting that "the rule of liberal construction

of [pro se] complaints applies to factual allegations").

This Court may affirm the district court's Rule 12(b)(1) dismissal if

dismissal would otherwise have been proper under Rule 12(b)(6).  *Sierra Club*,

648 F.3d at 857; *see also In re: Swine Flu Immunization Prod. Liab. Litig*., 880

F.2d 1439, 1444 (D.C. Cir. 1989) (appellate court may affirm district court's

dismissal of complaint on any ground that supports the judgment).

## II.  THE SWECKERS DO NOT CHALLENGE THE DISTRICT COURT'S FINDING THAT THE COMMISSION'S DECISION NOT TO ACT IS NONJUSTICIABLE

The district court found that the Sweckers did not overcome the *Chaney* presumption of unreviewability that attaches to the Commission's decision not to commence enforcement action.  That decision, accordingly, was committed to agency discretion by law and is not subject to judicial review.  Op. 9, JA 51; *see also Citizens For Responsibility & Ethics in Wash. v. FEC*, 892 F.3d 434, 441 (D.C. Cir. 2018); *Swecker v. FERC*, No. 06-1170 (D.C. Cir. Oct. 3, 2006) (granting FERC motion to dismiss; "The commission's refusal to initiate an enforcement action is not reviewable").  Nowhere in their opening brief do the Sweckers discuss (let alone attempt to rebut) that district court finding.  Instead, they merely advance their view of what the agency should have done but did not do.

The Administrative Procedure Act, 5 U.S.C. § 701(a)(2), expressly prohibits judicial review of an "agency action [that] is committed to agency discretion by law."  Under *Chaney*, an agency's decision not to exercise its enforcement authority is committed to its absolute discretion and thus is presumptively unreviewable.  470 U.S. at 831; *Sierra Club*, 648 F.3d at 855; *Balt. Gas*, 252 F.3d at 459.

That presumption of unreviewability may be overcome in three circumstances:  (1) where "the substantive statute has provided guidelines for the

12

agency to follow in exercising its enforcement powers"; (2) where the agency refuses "to institute proceedings based solely on the belief that it lacks jurisdiction"; and (3) where the agency "has consciously and expressly adopted a general policy that is so extreme as to amount to an abdication of its statutory responsibilities." *Chaney*, 470 U.S. at 833 & n.4 (internal quotation marks omitted); Op. 8, JA 50. The district court correctly found none of those three circumstances present here. Op. 8-9, JA 50-51.

As to the first *Chaney* exception, the substantive statute (PURPA) provides no guidelines or mandatory directives for the agency to follow in determining whether to commence an enforcement action. *Id*. 8, JA 50. Section 210(h)(2) is "'utterly silent on the manner in which the [agency] is to proceed against a particular transgressor.'" *See Sec'y of Labor v. Twentymile Coal Co*., 456 F.3d 151, 158 (D.C. Cir. 2006) (quoting *Balt. Gas*, 252 F.3d at 461). This sort of blank canvas gives a court "no meaningful standard against which to judge the agency's exercise of discretion." *Chaney*, 470 U.S. at 830.

Indeed, Congress's choice of words in this statute demonstrates its intent. The relevant provision speaks in permissive, not mandatory, terms: Section 210(h)(2)(A) states that the Commission "*may* enforce the requirements of subsection (f) . . . against any State regulatory authority or nonregulated electric utility." 16 U.S.C. § 824a-3(h)(2)(A) (emphasis added); *see also Indus.*

13

*Cogenerators*, 47 F.3d at 1232 ("[T]he Commission may, upon its own motion or upon petition, bring an enforcement action in district court to ensure compliance with the Act").  If the Commission does not act under subparagraph (A) despite being petitioned to do so, then the petitioning party "*may* bring an action in the appropriate United States district court to require such State regulatory authority or nonregulated electric utility to comply with such requirements . . . ."  16 U.S.C. § 824a-3(h)(2)(B) (emphasis added); *Citizens For Responsibility*, 892 F.3d at 439 ("To state the obvious, the word 'may' imposes no constraints on the [agency's] judgment about whether, in a particular matter, it should bring an enforcement action."); Antonin Scalia & Bryan A. Garner, *Reading Law:  The Interpretation of Legal Texts* 112 (2012) ("The traditional, commonly repeated rule is that *shall* is mandatory and *may* is permissive.").

Other PURPA provisions not relevant here, by contrast, use mandatory "shall" language, indicating that Congress intended the ordinary distinction between "may" and "shall" to govern.  *See, e.g.*, 16 U.S.C. § 824a-3(m)(3) (Commission "shall make a final determination within 90 days" of an application by a utility for relief from mandatory purchase obligation); *id.* § 824a-3(m)(7) (Commission "shall issue and enforce such regulations as are necessary" to ensure that a utility purchasing from a qualifying facility recovers costs); *see also Sierra Club*, 648 F.3d at 856 ("[W]hen a statute uses both 'may' and 'shall,' the normal

14

inference is that each is used in its usual sense—the one act being permissive, the other mandatory.") (internal quotation marks omitted); *accord Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 671 (D.C. Cir. 2016).

This Court also has confirmed the permissive text of PURPA.  That is, it has recognized that PURPA grants the Commission discretion to decide whether to bring an enforcement action against a nonregulated electric utility like Midland. *See Indus. Cogenerators*, 47 F.3d at 1234 ("FERC *can* initiate an enforcement action either upon its own motion or upon the petition of a private party.") (emphasis added); *Conn. Valley Elec. Co. v. FERC*, 208 F.3d 1037, 1043 (D.C. Cir. 2000) ("The Commission's only obligations under [PURPA] § 210 are the promulgation and periodic revision of these regulations and of the exemption regulations required by [PURPA] § 210(e); therefore, the Commission's decision not to take any [enforcement] action . . . cannot be a violation of § 210 by the Commission."); *N.Y. State Elec. & Gas Corp. v. FERC*, 117 F.3d 1473, 1476 (D.C. Cir. 1997).

The second and third *Chaney* exceptions offer the Sweckers no recourse either.  On the second exception, the district court noted that the Sweckers never alleged that FERC had declined to initiate proceedings "because it believes it lacks jurisdiction to do so."  Op. 9, JA 51.  The same goes for the third exception—the Sweckers failed to allege that the Commission had adopted a policy "so extreme as

15

to constitute an abdication of its responsibilities under PURPA." *Id*. Nor could

they:  the Commission's policy statement on its PURPA enforcement

responsibilities simply embraces the letter of the statute, noting that it is not

required to pursue any particular enforcement action.  *See Policy Statement*

*Regarding the Commission's Enforcement Role Under Section 210 of the Public*

*Utility Regulatory Policies Act of 1978*, 23 FERC ¶ 61,304, at 61,644-61,645

(1983) ("The Commission may undertake an enforcement action either on its own

motion or upon petition . . . .  The Commission is not required to undertake an

enforcement action described above.") (cited at Op. 9, JA 51).

The district court thus concluded correctly that the Sweckers failed to

overcome the presumption that FERC's decision not to initiate an enforcement

action is unreviewable.  And because they do not dispute any of those findings in

their opening brief, they have forfeited (and cannot on reply raise) any argument

on whether the Commission's decision is subject to judicial review here.  *See, e.g.*,

*Tramont Mfg., LLC v. NLRB*, 890 F.3d 1114, 1121 (D.C. Cir. 2018); *Newspaper*

*Ass'n of Am. v. Postal Regulatory Comm'n*, 734 F.3d 1208, 1212 (D.C. Cir. 2013).

Whether the agency decision is nonjusticiable or outside federal court

jurisdiction makes no difference here.  While the district court dismissed the

complaint under Rule 12(b)(1), this Court has acknowledged "it has not always

been consistent" in its rulings on whether agency decisions excluded from judicial

review by 5 U.S.C. § 701(a)(2) are outside the Court's jurisdiction (under Rule 12(b)(1)) or are nonjusticiable (under Rule 12(b)(6)). *Sierra Club*, 648 F.3d at 853 (internal quotation marks omitted). In *Sierra Club*, this Court "hasten[ed] to state that [it did] not fault the district court" for dismissing under Rule 12(b)(1), and simply affirmed under Rule 12(b)(6). *Id*. at 853, 857. It can do the same here.

## III.   THE SWECKERS HAVE NO CAUSE OF ACTION AGAINST FERC UNDER PURPA

Although the district court did not address the Commission's alternative argument—that FERC cannot be a defendant in a lawsuit filed under PURPA section 210(h)(2) (FERC Motion at 9-10)—the Sweckers raise it in their brief, Br. 14, so the Commission responds here.

The bounds of the private right of action conferred by section 210(h) are delineated strictly by the plain text of the statute: the private party (here, the Sweckers) may sue two (and only two) types of defendants—and the Commission is not one of them. *See Niagara Mohawk Power Corp. v. FERC*, 117 F.3d 1485, 1488 (D.C. Cir. 1997) (noting that section 210 sets out "a self-contained scheme by which the purposes of the PURPA are to be realized"). Those two options, under section 210(h)(2)(B), 16 U.S.C. § 824a-3(h)(2)(B), are the state regulatory authority or a "nonregulated electric utility." While that provision permits FERC to intervene "as a matter of right" in that federal action, it leaves no room for FERC to be a defendant.

The Sweckers seem to read the plain text of section 210(h) to imply a cause of action against FERC. In their view, FERC may be a defendant in federal court because "[a] clear reading of this statute does not expressly prohibit" that result. *See* Br. 14.

But this is not how courts read statutes. *See, e.g.*, *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001) ("The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others."). In *Hartford Underwriters Insurance Company v. Union Planters Bank, N.A.*, the Supreme Court rejected the very theory the Sweckers offer now. 530 U.S. 1, 8 (2000). The Court there considered the question of who was entitled to use a provision of the Bankruptcy Code, 11 U.S.C. § 506(c), to seek payment for a claim from property encumbered by a secured creditor's lien. While section 506(c) specified who may invoke that section ("[t]he trustee"), the petitioner argued that it did not expressly prohibit anyone else from doing so. 530 U.S. at 7-8.

The Court, however, found that theory—"that the expression of one thing indicates the inclusion of others unless exclusion is made explicit"—"contrary to common sense and common usage." *Id*. at 8. And when it comes to determining whether a statute confers a private cause of action, the Court has shown particular unwillingness to drift beyond its traditional fidelity to the statutory text. *See, e.g.*, *Touche Ross & Co. v. Redington*, 442 U.S. 560, 571 (1979) ("[I]mplying a private

18

right of action on the basis of congressional silence is a hazardous enterprise, at best."); *Alexander*, 532 U.S. at 286 ("Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress.").

At least one court of appeals already has considered—and rejected—the claim that the Commission may be a defendant in a lawsuit filed under PURPA. In *Niagara Mohawk Power Corp. v. FERC*, the Second Circuit confronted a case just like this one: a district court's dismissal, on jurisdictional grounds, of a complaint alleging that FERC, among others, violated PURPA. 306 F.3d 1264, 1268 (2d Cir. 2002). The court affirmed the district court and held that a private party "cannot maintain a claim against FERC under PURPA for the simple reason that no such claim exists." *Id*.

A straightforward reading of the statutory text, in the court's view, permitted private rights of action against only "a State regulatory authority or nonregulated electric utility"—FERC was neither of those, so therefore the plaintiff "may not sue FERC under PURPA." *See id*.; 16 U.S.C. § 824a-3(h)(2)(B); *see also Indus. Cogenerators*, 47 F.3d at 1234 ("Section 210 creates an enforcement scheme by which either the FERC or a private party may see to it that *a state regulatory commission or an unregulated utility* complies with the PURPA.") (emphasis added). Not only is that plain-text reading correct, it also accords with the negative-implication canon. *See, e.g.*, *Loughrin v. United States*, 134 S. Ct. 2384,

2390 (2014) ("We have often noted that when 'Congress includes particular language in one section of a statute but omits it in another'—let alone in the very next provision—this Court 'presume[s]' that Congress intended a difference in meaning.") (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)); *accord Stovic v. R.R. Retirement Bd.*, 826 F.3d 500, 503 (D.C. Cir. 2016); Scalia & Garner, *supra* p.14, at 107-08.

Once the Commission announced its decision not to initiate an enforcement action, the Sweckers' only remaining avenue to pursue their PURPA claims was an action in federal district court against the appropriate "State regulatory authority or nonregulated electric utility"—but not against FERC. *See* 16 U.S.C. § 824a-3(h)(2)(B); *see also Indus. Cogenerators*, 47 F.3d at 1232; *Xcel Energy Servs. Inc. v. FERC*, 407 F.3d 1242, 1243-44 (D.C. Cir. 2005); *Niagara Mohawk*, 117 F.3d at 1488.

The only role contemplated in the statute for the Commission in the district court proceeding was an intervenor "as a matter of right." *See* 16 U.S.C. § 824a-3(h)(2)(B). And FERC opted not to intervene.

## CONCLUSION

The district court's order dismissing the complaint against the Commission should be affirmed.

Respectfully submitted,

James P. Danly
General Counsel

Robert H. Solomon
Solicitor

*/s/ Anand R. Viswanathan*
Anand R. Viswanathan
Attorney

Federal Energy Regulatory
  Commission
888 First Street, N.E.
Washington, D.C. 20426
Phone:  202-502-6537
Fax:      202-273-0901
E-mail:   Anand.Viswanathan@ferc.gov

Corrected Final Brief:  October 10, 2018

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g) and Circuit Rule 32(e), I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,479 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in Times New Roman 14-point font using Microsoft Word 2013.


                                        */s/ Anand R. Viswanathan*
                                        Anand R. Viswanathan
                                        Attorney

Federal Energy Regulatory
  Commission
888 First Street, N.E.
Washington, D.C. 20426
Phone:  202-502-6537
Fax:      202-273-0901
E-mail:  Anand.Viswanathan@ferc.gov

October 10, 2018

ADDENDUM
STATUTES

# TABLE OF CONTENTS

**PAGE**

**STATUTES:**

Administrative Procedure Act

    5 U.S.C. § 701(a)(2) ................................................................ A-1

Public Utility Regulatory Policies Act of 1978

    16 U.S.C. § 796(17)(A)(i)-(ii) ......................................A-2-A-4

    16 U.S.C. § 824a-3 ................................................................ A-5

    16 U.S.C. § 824a-3(a) ........................................................... A-5

    16 U.S.C. § 824a-3(b) ........................................................... A-5

    16 U.S.C. § 824a-3(d) ........................................................... A-6

    16 U.S.C. § 824a-3(h)(2) .................................................A-6-A-7

    16 U.S.C. § 824a-3(m)(3) ..................................................... A-8

    16 U.S.C. § 824a-3(m)(7) ................................................A-8-A-9

resentatives'' for ''the committees on the Judiciary of the Senate and the House of Representatives, the Select Committee on Small Business of the Senate, and the Committee on Small Business of the House of Representatives'', was executed by making the substitution for ''the Committees on the Judiciary of the Senate and House of Representatives, the Select Committee on Small Business of the Senate, and the Committee on Small Business of the House of Representatives'' to reflect the probable intent of Congress.

Subsec. (b). Pub. L. 104–121, §243(b)(2), substituted ''his or her views with respect to compliance with this chapter, the adequacy of the rulemaking record with respect to small entities and the'' for ''his views with respect to the''.

CHANGE OF NAME

Committee on Small Business of Senate changed to Committee on Small Business and Entrepreneurship of Senate. See Senate Resolution No. 123, One Hundred Seventh Congress, June 29, 2001.

EFFECTIVE DATE OF 1996 AMENDMENT

Amendment by Pub. L. 104–121 effective on expiration of 90 days after Mar. 29, 1996, but inapplicable to interpretative rules for which a notice of proposed rulemaking was published prior to Mar. 29, 1996, see section 245 of Pub. L. 104–121, set out as a note under section 601 of this title.

## CHAPTER 7—JUDICIAL REVIEW

Sec.
701.    Application; definitions.
702.    Right of review.
703.    Form and venue of proceeding.
704.    Actions reviewable.
705.    Relief pending review.
706.    Scope of review.

SHORT TITLE

The provisions of sections 551 to 559 of this title and this chapter were originally enacted by act June 11, 1946, ch. 423, 60 Stat. 237, popularly known as the ''Administrative Procedure Act''. That Act was repealed as part of the general revision of this title by Pub. L. 89–554 and its provisions incorporated into sections 551 to 559 of this title and this chapter.

## § 701. Application; definitions

(a) This chapter applies, according to the provisions thereof, except to the extent that—

(1) statutes preclude judicial review; or

(2) agency action is committed to agency discretion by law.

(b) For the purpose of this chapter—

(1) ''agency'' means each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include—

(A) the Congress;

(B) the courts of the United States;

(C) the governments of the territories or possessions of the United States;

(D) the government of the District of Columbia;

(E) agencies composed of representatives of the parties or of representatives of organizations of the parties to the disputes determined by them;

(F) courts martial and military commissions;

(G) military authority exercised in the field in time of war or in occupied territory; or

(H) functions conferred by sections 1738, 1739, 1743, and 1744 of title 12; subchapter II of chapter 471 of title 49; or sections 1884, 1891–1902, and former section 1641(b)(2), of title 50, appendix; and

(2) ''person'', ''rule'', ''order'', ''license'', ''sanction'', ''relief'', and ''agency action'' have the meanings given them by section 551 of this title.

(Pub. L. 89–554, Sept. 6, 1966, 80 Stat. 392; Pub. L. 103–272, §5(a), July 5, 1994, 108 Stat. 1373; Pub. L. 111–350, §5(a)(3), Jan. 4, 2011, 124 Stat. 3841.)

HISTORICAL AND REVISION NOTES

| Derivation | U.S. Code | Revised Statutes and Statutes at Large |
|---|---|---|
| (a) ............ | 5 U.S.C. 1009 (introductory clause). | June 11, 1946, ch. 324, §10 (introductory clause), 60 Stat. 243. |

In subsection (a), the words ''This chapter applies, according to the provisions thereof,'' are added to avoid the necessity of repeating the introductory clause of former section 1009 in sections 702–706.

Subsection (b) is added on authority of section 2 of the Act of June 11, 1946, ch. 324, 60 Stat. 237, as amended, which is carried into section 551 of this title.

In subsection (b)(1)(G), the words '' or naval'' are omitted as included in ''military''.

In subsection (b)(1)(H), the words ''functions which by law expire on the termination of present hostilities, within any fixed period thereafter, or before July 1, 1947'' are omitted as executed. Reference to the ''Selective Training and Service Act of 1940'' is omitted as that Act expired on Mar. 31, 1947. Reference to the ''Sugar Control Extension Act of 1947'' is omitted as that Act expired on Mar. 31, 1948. References to the ''Housing and Rent Act of 1947, as amended'' and the ''Veterans' Emergency Housing Act of 1946'' have been consolidated as they are related. The reference to former section 1641(b)(2) of title 50, appendix, is retained notwithstanding its repeal by §111(a)(1) of the Act of Sept. 21, 1961, Pub. L. 87–256, 75 Stat. 538, since §111(c) of the Act provides that a reference in other Acts to a provision of law repealed by §111(a) shall be considered to be a reference to the appropriate provisions of Pub. L. 87–256.

Standard changes are made to conform with the definitions applicable and the style of this title as outlined in the preface to the report.

REFERENCES IN TEXT

Sections 1891–1902 of title 50, appendix, referred to in subsec. (b)(1)(H), were omitted from the Code as executed.

AMENDMENTS

2011—Subsec. (b)(1)(H). Pub. L. 111–350 struck out ''chapter 2 of title 41;'' after ''title 12;''.

1994—Subsec. (b)(1)(H). Pub. L. 103–272 substituted ''subchapter II of chapter 471 of title 49; or sections'' for ''or sections 1622,''.

## § 702. Right of review

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be

reference, and for printing and binding) as are necessary to execute its functions. Expenditures by the commission shall be allowed and paid upon the presentation of itemized vouchers therefor, approved by the chairman of the commission or by such other member or officer as may be authorized by the commission for that purpose subject to applicable regulations under chapters 1 to 11 of title 40 and division C (except sections 3302, 3306(f), 3307(e), 3501(b), 3509, 3906, 4104, 4710, and 4711) of subtitle I of title 41.

(June 10, 1920, ch. 285, pt. I, §2, 41 Stat. 1063; June 23, 1930, ch. 572, §1, 46 Stat. 798; renumbered pt. I, Aug. 26, 1935, ch. 687, title II, §212, 49 Stat. 847; Oct. 28, 1949, ch. 782, title XI, §1106(a), 63 Stat. 972; Oct. 31, 1951, ch. 654, §2(14), 65 Stat. 707.)

CODIFICATION

All appointments referred to in the first sentence are subject to the civil service laws unless specifically excepted by those laws or by laws enacted subsequent to Executive Order 8743, Apr. 23, 1941, issued by the President pursuant to the Act of Nov. 26, 1940, ch. 919, title I, §1, 54 Stat. 1211, which covered most excepted positions into the classified (competitive) civil service. The Order is set out as a note under section 3301 of Title 5, Government Organization and Employees.

As to the compensation of such personnel, sections 1202 and 1204 of the Classification Act of 1949, 63 Stat. 972, 973, repealed the Classification Act of 1923 and all other laws or parts of laws inconsistent with the 1949 Act. The Classification Act of 1949 was repealed Pub. L. 89–554, Sept. 6, 1966, §8(a), 80 Stat. 632, and reenacted as chapter 51 and subchapter III of chapter 53 of Title 5. Section 5102 of Title 5 contains the applicability provisions of the 1949 Act, and section 5103 of Title 5 authorizes the Office of Personnel Management to determine the applicability to specific positions and employees.

In text, "chapter 51 and subchapter III of chapter 53 of title 5" substituted for "the Classification Act of 1949, as amended" on authority of Pub. L. 89–554, §7(b), Sept. 6, 1966, 80 Stat. 631, the first section of which enacted Title 5, Government Organization and Employees.

In text, "chapters 1 to 11 of title 40 and division C (except sections 3302, 3306(f), 3307(e); 3501(b), 3509, 3906, 4104, 4710, and 4711) of subtitle I of title 41" substituted for "the Federal Property and Administrative Services Act of 1949, as amended" on authority of Pub. L. 107–217, §5(c), Aug. 21, 2002, 116 Stat. 1303, which Act enacted Title 40, Public Buildings, Property, and Works, and Pub. L. 111–350, §6(c), Jan. 4, 2011, 124 Stat. 3854, which Act enacted Title 41, Public Contracts.

AMENDMENTS

1951—Act Oct. 31, 1951, inserted reference to applicable regulations of the Federal Property and Administrative Services Act of 1949, as amended, at end of section.

1949—Act Oct. 28, 1949, substituted "Classification Act of 1949" for "Classification Act of 1923".

1930—Act June 23, 1930, substituted provisions permitting the commission to appoint, prescribe the duties, and fix the salaries of, a secretary, a chief engineer, a general counsel, a solicitor, and a chief accountant, and to appoint such other officers and employees as are necessary in the execution of its functions and fix their salaries, and authorizing the detail of officers from the Corps of Engineers, or other branches of the United States Army, to serve the commission as engineer officers, or in any other capacity, in field work outside the seat of government, and the detail, assignment or transfer to the commission of engineers in or under the Departments of the Interior or Agriculture for work outside the seat of government for provisions which required the commission to appoint an executive sec-

retary at a salary of $5,000 per year and prescribe his duties, and which permitted the detail of an officer from the United States Engineer Corps to serve the commission as engineer officer; and inserted provisions permitting the commission to make certain expenditures necessary in the execution of its functions, and allowing the payment of expenditures upon the presentation of itemized vouchers approved by authorized persons.

REPEALS

Act Oct. 28, 1949, ch. 782, cited as a credit to this section, was repealed (subject to a savings clause) by Pub. L. 89–554, Sept. 6, 1966, §8, 80 Stat. 632, 655.

§ 793a. Repealed. Pub. L. 87–367, title I, § 103(5), Oct. 4, 1961, 75 Stat. 787

Section, Pub. L. 86–626, title I, §101, July 12, 1960, 74 Stat. 430, authorized the Federal Power Commission to place four additional positions in grade 18, one in grade 17 and one in grade 16 of the General Schedule of the Classification Act of 1949.

§§ 794, 795. Omitted

CODIFICATION

Section 794, which required the work of the commission to be performed by and through the Departments of War, Interior, and Agriculture and their personnel, consisted of the second paragraph of section 2 of act June 10, 1920, ch. 285, 41 Stat. 1063, which was omitted in the revision of said section 2 by act June 23, 1930, ch. 572, §1, 46 Stat. 798. The first and third paragraphs of said section 2 were formerly classified to sections 793 and 795 of this title.

Section 795, which related to expenses of the commission generally, consisted of the third paragraph of section 2 of act June 10, 1920, ch. 285, 41 Stat. 1063. Such section 2 was amended generally by act June 23, 1930, ch. 572, §1, 46 Stat. 798, and is classified to section 793 of this title. The first and second paragraphs of said section 2 were formerly classified to sections 793 and 794 of this title.

§ 796. Definitions

The words defined in this section shall have the following meanings for purposes of this chapter, to wit:

(1) "public lands" means such lands and interest in lands owned by the United States as are subject to private appropriation and disposal under public land laws. It shall not include "reservations", as hereinafter defined;

(2) "reservations" means national forests, tribal lands embraced within Indian reservations, military reservations, and other lands and interests in lands owned by the United States, and withdrawn, reserved, or withheld from private appropriation and disposal under the public land laws; also lands and interests in lands acquired and held for any public purposes; but shall not include national monuments or national parks;

(3) "corporation" means any corporation, joint-stock company, partnership, association, business trust, organized group of persons, whether incorporated or not, or a receiver or receivers, trustee or trustees of any of the foregoing. It shall not include "municipalities" as hereinafter defined;

(4) "person" means an individual or a corporation;

(5) "licensee" means any person, State, or municipality licensed under the provisions of

section 797 of this title, and any assignee or successor in interest thereof;

(6) "State" means a State admitted to the Union, the District of Columbia, and any organized Territory of the United States;

(7) "municipality" means a city, county, irrigation district, drainage district, or other political subdivision or agency of a State competent under the laws thereof to carry on the business of developing, transmitting, utilizing, or distributing power;

(8) "navigable waters" means those parts of streams or other bodies of water over which Congress has jurisdiction under its authority to regulate commerce with foreign nations and among the several States, and which either in their natural or improved condition notwithstanding interruptions between the navigable parts of such streams or waters by falls, shallows, or rapids compelling land carriage, are used or suitable for use for the transportation of persons or property in interstate or foreign commerce, including therein all such interrupting falls, shallows, or rapids, together with such other parts of streams as shall have been authorized by Congress for improvement by the United States or shall have been recommended to Congress for such improvement after investigation under its authority;

(9) "municipal purposes" means and includes all purposes within municipal powers as defined by the constitution or laws of the State or by the charter of the municipality;

(10) "Government dam" means a dam or other work constructed or owned by the United States for Government purposes with or without contribution from others;

(11) "project" means complete unit of improvement or development, consisting of a power house, all water conduits, all dams and appurtenant works and structures (including navigation structures) which are a part of said unit, and all storage, diverting, or forebay reservoirs directly connected therewith, the primary line or lines transmitting power therefrom to the point of junction with the distribution system or with the interconnected primary transmission system, all miscellaneous structures used and useful in connection with said unit or any part thereof, and all water-rights, rights-of-way, ditches, dams, reservoirs, lands, or interest in lands the use and occupancy of which are necessary or appropriate in the maintenance and operation of such unit;

(12) "project works" means the physical structures of a project;

(13) "net investment" in a project means the actual legitimate original cost thereof as defined and interpreted in the "classification of investment in road and equipment of steam roads, issue of 1914, Interstate Commerce Commission", plus similar costs of additions thereto and betterments thereof, minus the sum of the following items properly allocated thereto, if and to the extent that such items have been accumulated during the period of the license from earnings in excess of a fair return on such investment: (a) Unappropriated surplus, (b) aggregate credit balances of current depre-

ciation accounts, and (c) aggregate appropriations of surplus or income held in amortization, sinking fund, or similar reserves, or expended for additions or betterments or used for the purposes for which such reserves were created. The term "cost" shall include, insofar as applicable, the elements thereof prescribed in said classification, but shall not include expenditures from funds obtained through donations by States, municipalities, individuals, or others, and said classification of investment of the Interstate Commerce Commission shall insofar as applicable be published and promulgated as a part of the rules and regulations of the Commission;

(14) "Commission" and "Commissioner" means the Federal Power Commission, and a member thereof, respectively;

(15) "State commission" means the regulatory body of the State or municipality having jurisdiction to regulate rates and charges for the sale of electric energy to consumers within the State or municipality;

(16) "security" means any note, stock, treasury stock, bond, debenture, or other evidence of interest in or indebtedness of a corporation subject to the provisions of this chapter;

(17)(A) "small power production facility" means a facility which is an eligible solar, wind, waste, or geothermal facility, or a facility which—

(i) produces electric energy solely by the use, as a primary energy source, of biomass, waste, renewable resources, geothermal resources, or any combination thereof; and

(ii) has a power production capacity which, together with any other facilities located at the same site (as determined by the Commission), is not greater than 80 megawatts;

(B) "primary energy source" means the fuel or fuels used for the generation of electric energy, except that such term does not include, as determined under rules prescribed by the Commission, in consultation with the Secretary of Energy—

(i) the minimum amounts of fuel required for ignition, startup, testing, flame stabilization, and control uses, and

(ii) the minimum amounts of fuel required to alleviate or prevent—

(I) unanticipated equipment outages, and
(II) emergencies, directly affecting the public health, safety, or welfare, which would result from electric power outages;

(C) "qualifying small power production facility" means a small power production facility that the Commission determines, by rule, meets such requirements (including requirements respecting fuel use, fuel efficiency, and reliability) as the Commission may, by rule, prescribe;

(D) "qualifying small power producer" means the owner or operator of a qualifying small power production facility;

(E) "eligible solar, wind, waste or geothermal facility" means a facility which produces electric energy solely by the use, as a primary energy source, of solar energy, wind energy, waste resources or geothermal resources; but only if—

(i) either of the following is submitted to the Commission not later than December 31, 1994:

(I) an application for certification of the facility as a qualifying small power production facility; or

(II) notice that the facility meets the requirements for qualification; and

(ii) construction of such facility commences not later than December 31, 1999, or, if not, reasonable diligence is exercised toward the completion of such facility taking into account all factors relevant to construction of the facility.[1]

(18)(A) "cogeneration facility" means a facility which produces—
(i) electric energy, and
(ii) steam or forms of useful energy (such as heat) which are used for industrial, commercial, heating, or cooling purposes;

(B) "qualifying cogeneration facility" means a cogeneration facility that the Commission determines, by rule, meets such requirements (including requirements respecting minimum size, fuel use, and fuel efficiency) as the Commission may, by rule, prescribe;

(C) "qualifying cogenerator" means the owner or operator of a qualifying cogeneration facility;

(19) "Federal power marketing agency" means any agency or instrumentality of the United States (other than the Tennessee Valley Authority) which sells electric energy;

(20) "evidentiary hearings" and "evidentiary proceeding" mean a proceeding conducted as provided in sections 554, 556, and 557 of title 5;

(21) "State regulatory authority" has the same meaning as the term "State commission", except that in the case of an electric utility with respect to which the Tennessee Valley Authority has ratemaking authority (as defined in section 2602 of this title), such term means the Tennessee Valley Authority;

(22) ELECTRIC UTILITY.—(A) The term "electric utility" means a person or Federal or State agency (including an entity described in section 824(f) of this title) that sells electric energy.[1]

(B) The term "electric utility" includes the Tennessee Valley Authority and each Federal power marketing administration.[1]

(23) TRANSMITTING UTILITY.—The term "transmitting utility" means an entity (including an entity described in section 824(f) of this title) that owns, operates, or controls facilities used for the transmission of electric energy—
(A) in interstate commerce;
(B) for the sale of electric energy at wholesale.[1]

(24) WHOLESALE TRANSMISSION SERVICES.—The term "wholesale transmission services" means the transmission of electric energy sold, or to be sold, at wholesale in interstate commerce.[1]

(25) EXEMPT WHOLESALE GENERATOR.—The term "exempt wholesale generator" shall have the meaning provided by section 79z–5a[2] of title 15.[1]

(26) ELECTRIC COOPERATIVE.—The term "electric cooperative" means a cooperatively owned electric utility.[1]

(27) RTO.—The term "Regional Transmission Organization" or "RTO" means an entity of sufficient regional scope approved by the Commission—
(A) to exercise operational or functional control of facilities used for the transmission of electric energy in interstate commerce; and
(B) to ensure nondiscriminatory access to the facilities.[1]

(28) ISO.—The term "Independent System Operator" or "ISO" means an entity approved by the Commission—
(A) to exercise operational or functional control of facilities used for the transmission of electric energy in interstate commerce; and
(B) to ensure nondiscriminatory access to the facilities.[3]

(29) TRANSMISSION ORGANIZATION.—The term "Transmission Organization" means a Regional Transmission Organization, Independent System Operator, independent transmission provider, or other transmission organization finally approved by the Commission for the operation of transmission facilities.

(June 10, 1920, ch. 285, pt. I, § 3, 41 Stat. 1063; renumbered pt. I and amended, Aug. 26, 1935, ch. 687, title II, §§ 201, 212, 49 Stat. 838, 847; Pub. L. 95–617, title II, § 201, Nov. 9, 1978, 92 Stat. 3134; Pub. L. 96–294, title VI, § 643(a)(1), June 30, 1980, 94 Stat. 770; Pub. L. 101–575, § 3, Nov. 15, 1990, 104 Stat. 2834; Pub. L. 102–46, May 17, 1991, 105 Stat. 249; Pub. L. 102–486, title VII, § 726, Oct. 24, 1992, 106 Stat. 2921; Pub. L. 109–58, title XII, §§ 1253(b), 1291(b), Aug. 8, 2005, 119 Stat. 970, 984.)

REFERENCES IN TEXT

Section 79z–5a of title 15, referred to in par. (25), was repealed by Pub. L. 109–58, title XII, § 1263, Aug. 8, 2005, 119 Stat. 974.

AMENDMENTS

2005—Par. (17)(C). Pub. L. 109–58, § 1253(b)(1), amended subpar. (C) generally. Prior to amendment, subpar. (C) read as follows: "qualifying small power production facility" means a small power production facility—
"(i) which the Commission determines, by rule, meets such requirements (including requirements respecting fuel use, fuel efficiency, and reliability) as the Commission may, by rule, prescribe; and
"(ii) which is owned by a person not primarily engaged in the generation or sale of electric power (other than electric power solely from cogeneration facilities or small power production facilities);".
Par. (18)(B). Pub. L. 109–58, § 1253(b)(2), amended subpar. (B) generally. Prior to amendment, subpar. (B) read as follows: "qualifying cogeneration facility" means a cogeneration facility which—
"(i) the Commission determines, by rule, meets such requirements (including requirements respecting minimum size, fuel use, and fuel efficiency) as the Commission may, by rule, prescribe; and
"(ii) is owned by a person not primarily engaged in the generation or sale of electric power (other than

---

[1] So in original. The period probably should be a semicolon.

[2] See References in Text note below.

[3] So in original. The period probably should be "; and".

(C) the various procedures that might be used in case of an emergency outage to minimize the public disruption and economic loss that might be caused by such an outage and the cost effectiveness of such procedures.

Such study shall be completed and submitted to the President and the Congress not later than 18 months after November 9, 1978. Before such submittal the Secretary shall provide an opportunity for public comment on the results of such study.

(2) The study under paragraph (1) shall include consideration of the following:

(A) the cost effectiveness of investments in each of the components involved in providing adequate and reliable electric service, including generation, transmission, and distribution facilities, and devices available to the electric consumer;

(B) the environmental and other effects of the investments considered under subparagraph (A);

(C) various types of electric utility systems in terms of generation, transmission, distribution and customer mix, the extent to which differences in reliability levels may be desirable, and the cost-effectiveness of the various methods which could be used to decrease the number and severity of any outages among the various types of systems;

(D) alternatives to adding new generation facilities to achieve such desired levels of reliability (including conservation);

(E) the cost-effectiveness of adding a number of small, decentralized conventional and non-conventional generating units rather than a small number of large generating units with a similar total megawatt capacity for achieving the desired level of reliability; and

(F) any standards for electric utility reliability used by, or suggested for use by, the electric utility industry in terms of cost-effectiveness in achieving the desired level of reliability, including equipment standards, standards for operating procedures and training of personnel, and standards relating the number and severity of outages to periods of time.

**(b) Examination of reliability issues by reliability councils**

The Secretary, in consultation with the Commission, may, from time to time, request the reliability councils established under section 202(a) of the Federal Power Act [16 U.S.C. 824a(a) of this title] or other appropriate persons (including Federal agencies) to examine and report to him concerning any electric utility reliability issue. The Secretary shall report to the Congress (in its annual report or in the report required under subsection (a) of this section if appropriate) the results of any examination under the preceding sentence.

**(c) Department of Energy recommendations**

The Secretary, in consultation with the Commission, and after opportunity for public comment, may recommend industry standards for reliability to the electric utility industry, including standards with respect to equipment, operating procedures and training of personnel, and standards relating to the level or levels of

reliability appropriate to adequately and reliably serve the needs of electric consumers. The Secretary shall include in his annual report—

(1) any recommendations made under this subsection or any recommendations respecting electric utility reliability problems under any other provision of law, and

(2) a description of actions taken by electric utilities with respect to such recommendations.

(Pub. L. 95–617, title II, § 209, Nov. 9, 1978, 92 Stat. 3143.)

CODIFICATION

Section was enacted as part of the Public Utility Regulatory Policies Act of 1978, and not as part of the Federal Power Act which generally comprises this chapter.

DEFINITIONS

For definitions of terms used in this section, see section 2602 of this title.

## § 824a–3. Cogeneration and small power production

**(a) Cogeneration and small power production rules**

Not later than 1 year after November 9, 1978, the Commission shall prescribe, and from time to time thereafter revise, such rules as it determines necessary to encourage cogeneration and small power production, and to encourage geothermal small power production facilities of not more than 80 megawatts capacity, which rules require electric utilities to offer to—

(1) sell electric energy to qualifying cogeneration facilities and qualifying small power production facilities[1] and

(2) purchase electric energy from such facilities.

Such rules shall be prescribed, after consultation with representatives of Federal and State regulatory agencies having ratemaking authority for electric utilities, and after public notice and a reasonable opportunity for interested persons (including State and Federal agencies) to submit oral as well as written data, views, and arguments. Such rules shall include provisions respecting minimum reliability of qualifying cogeneration facilities and qualifying small power production facilities (including reliability of such facilities during emergencies) and rules respecting reliability of electric energy service to be available to such facilities from electric utilities during emergencies. Such rules may not authorize a qualifying cogeneration facility or qualifying small power production facility to make any sale for purposes other than resale.

**(b) Rates for purchases by electric utilities**

The rules prescribed under subsection (a) of this section shall insure that, in requiring any electric utility to offer to purchase electric energy from any qualifying cogeneration facility or qualifying small power production facility, the rates for such purchase—

(1) shall be just and reasonable to the electric consumers of the electric utility and in the public interest, and

---

[1] So in original. Probably should be followed by a comma.

(2) shall not discriminate against qualifying cogenerators or qualifying small power producers.

No such rule prescribed under subsection (a) of this section shall provide for a rate which exceeds the incremental cost to the electric utility of alternative electric energy.

**(c) Rates for sales by utilities**

The rules prescribed under subsection (a) of this section shall insure that, in requiring any electric utility to offer to sell electric energy to any qualifying cogeneration facility or qualifying small power production facility, the rates for such sale—

(1) shall be just and reasonable and in the public interest, and

(2) shall not discriminate against the qualifying cogenerators or qualifying small power producers.

**(d) "Incremental cost of alternative electric energy" defined**

For purposes of this section, the term "incremental cost of alternative electric energy" means, with respect to electric energy purchased from a qualifying cogenerator or qualifying small power producer, the cost to the electric utility of the electric energy which, but for the purchase from such cogenerator or small power producer, such utility would generate or purchase from another source.

**(e) Exemptions**

(1) Not later than 1 year after November 9, 1978, and from time to time thereafter, the Commission shall, after consultation with representatives of State regulatory authorities, electric utilities, owners of cogeneration facilities and owners of small power production facilities, and after public notice and a reasonable opportunity for interested persons (including State and Federal agencies) to submit oral as well as written data, views, and arguments, prescribe rules under which geothermal small power production facilities of not more than 80 megawatts capacity, qualifying cogeneration facilities, and qualifying small power production facilities are exempted in whole or part from the Federal Power Act [16 U.S.C. 791a et seq.], from the Public Utility Holding Company Act,[2] from State laws and regulations respecting the rates, or respecting the financial or organizational regulation, of electric utilities, or from any combination of the foregoing, if the Commission determines such exemption is necessary to encourage cogeneration and small power production.

(2) No qualifying small power production facility (other than a qualifying small power production facility which is an eligible solar, wind, waste, or geothermal facility as defined in section 3(17)(E) of the Federal Power Act [16 U.S.C. 796(17)(E)]) which has a power production capacity which, together with any other facilities located at the same site (as determined by the Commission), exceeds 30 megawatts, or 80 megawatts for a qualifying small power production facility using geothermal energy as the primary energy source, may be exempted under rules

under paragraph (1) from any provision of law or regulation referred to in paragraph (1), except that any qualifying small power production facility which produces electric energy solely by the use of biomass as a primary energy source, may be exempted by the Commission under such rules from the Public Utility Holding Company Act[2] and from State laws and regulations referred to in such paragraph (1).

(3) No qualifying small power production facility or qualifying cogeneration facility may be exempted under this subsection from—

(A) any State law or regulation in effect in a State pursuant to subsection (f) of this section,

(B) the provisions of section 210, 211, or 212 of the Federal Power Act [16 U.S.C. 824i, 824j, or 824k] or the necessary authorities for enforcement of any such provision under the Federal Power Act [16 U.S.C. 791a et seq.], or

(C) any license or permit requirement under part I of the Federal Power Act [16 U.S.C. 791a et seq.] any provision under such Act related to such a license or permit requirement, or the necessary authorities for enforcement of any such requirement.

**(f) Implementation of rules for qualifying cogeneration and qualifying small power production facilities**

(1) Beginning on or before the date one year after any rule is prescribed by the Commission under subsection (a) of this section or revised under such subsection, each State regulatory authority shall, after notice and opportunity for public hearing, implement such rule (or revised rule) for each electric utility for which it has ratemaking authority.

(2) Beginning on or before the date one year after any rule is prescribed by the Commission under subsection (a) of this section or revised under such subsection, each nonregulated electric utility shall, after notice and opportunity for public hearing, implement such rule (or revised rule).

**(g) Judicial review and enforcement**

(1) Judicial review may be obtained respecting any proceeding conducted by a State regulatory authority or nonregulated electric utility for purposes of implementing any requirement of a rule under subsection (a) of this section in the same manner, and under the same requirements, as judicial review may be obtained under section 2633 of this title in the case of a proceeding to which section 2633 of this title applies.

(2) Any person (including the Secretary) may bring an action against any electric utility, qualifying small power producer, or qualifying cogenerator to enforce any requirement established by a State regulatory authority or nonregulated electric utility pursuant to subsection (f) of this section. Any such action shall be brought only in the manner, and under the requirements, as provided under section 2633 of this title with respect to an action to which section 2633 of this title applies.

**(h) Commission enforcement**

(1) For purposes of enforcement of any rule prescribed by the Commission under subsection (a) of this section with respect to any operations

---

[2] See References in Text note below.

of an electric utility, a qualifying cogeneration facility or a qualifying small power production facility which are subject to the jurisdiction of the Commission under part II of the Federal Power Act [16 U.S.C. 824 et seq.], such rule shall be treated as a rule under the Federal Power Act [16 U.S.C. 791a et seq.]. Nothing in subsection (g) of this section shall apply to so much of the operations of an electric utility, a qualifying cogeneration facility or a qualifying small power production facility as are subject to the jurisdiction of the Commission under part II of the Federal Power Act.

(2)(A) The Commission may enforce the requirements of subsection (f) of this section against any State regulatory authority or nonregulated electric utility. For purposes of any such enforcement, the requirements of subsection (f)(1) of this section shall be treated as a rule enforceable under the Federal Power Act [16 U.S.C. 791a et seq.]. For purposes of any such action, a State regulatory authority or nonregulated electric utility shall be treated as a person within the meaning of the Federal Power Act. No enforcement action may be brought by the Commission under this section other than—

(i) an action against the State regulatory authority or nonregulated electric utility for failure to comply with the requirements of subsection (f) of this section[3] or

(ii) an action under paragraph (1).

(B) Any electric utility, qualifying cogenerator, or qualifying small power producer may petition the Commission to enforce the requirements of subsection (f) of this section as provided in subparagraph (A) of this paragraph. If the Commission does not initiate an enforcement action under subparagraph (A) against a State regulatory authority or nonregulated electric utility within 60 days following the date on which a petition is filed under this subparagraph with respect to such authority, the petitioner may bring an action in the appropriate United States district court to require such State regulatory authority or nonregulated electric utility to comply with such requirements, and such court may issue such injunctive or other relief as may be appropriate. The Commission may intervene as a matter of right in any such action.

**(i) Federal contracts**

No contract between a Federal agency and any electric utility for the sale of electric energy by such Federal agency for resale which is entered into after November 9, 1978, may contain any provision which will have the effect of preventing the implementation of any rule under this section with respect to such utility. Any provision in any such contract which has such effect shall be null and void.

**(j) New dams and diversions**

Except for a hydroelectric project located at a Government dam (as defined in section 3(10) of the Federal Power Act [16 U.S.C. 796(10)]) at which non-Federal hydroelectric development is permissible, this section shall not apply to any hydroelectric project which impounds or diverts the water of a natural watercourse by means of a new dam or diversion unless the project meets each of the following requirements:

**(1) No substantial adverse effects**

At the time of issuance of the license or exemption for the project, the Commission finds that the project will not have substantial adverse effects on the environment, including recreation and water quality. Such finding shall be made by the Commission after taking into consideration terms and conditions imposed under either paragraph (3) of this subsection or section 10 of the Federal Power Act [16 U.S.C. 803] (whichever is appropriate as required by that Act [16 U.S.C. 791a et seq.] or the Electric Consumers Protection Act of 1986) and compliance with other environmental requirements applicable to the project.

**(2) Protected rivers**

At the time the application for a license or exemption for the project is accepted by the Commission (in accordance with the Commission's regulations and procedures in effect on January 1, 1986, including those relating to environmental consultation), such project is not located on either of the following:

(A) Any segment of a natural watercourse which is included in (or designated for potential inclusion in) a State or national wild and scenic river system.

(B) Any segment of a natural watercourse which the State has determined, in accordance with applicable State law, to possess unique natural, recreational, cultural, or scenic attributes which would be adversely affected by hydroelectric development.

**(3) Fish and wildlife terms and conditions**

The project meets the terms and conditions set by fish and wildlife agencies under the same procedures as provided for under section 30(c) of the Federal Power Act [16 U.S.C. 823a(c)].

**(k) "New dam or diversion" defined**

For purposes of this section, the term "new dam or diversion" means a dam or diversion which requires, for purposes of installing any hydroelectric power project, any construction, or enlargement of any impoundment or diversion structure (other than repairs or reconstruction or the addition of flashboards or similar adjustable devices)[4]

**(l) Definitions**

For purposes of this section, the terms "small power production facility", "qualifying small power production facility", "qualifying small power producer", "primary energy source", "cogeneration facility", "qualifying cogeneration facility", and "qualifying cogenerator" have the respective meanings provided for such terms under section 3(17) and (18) of the Federal Power Act [16 U.S.C. 796(17), (18)].

**(m) Termination of mandatory purchase and sale requirements**

**(1) Obligation to purchase**

After August 8, 2005, no electric utility shall be required to enter into a new contract or ob-

---

[3] So in original. Probably should be followed by a comma.

[4] So in original. Probably should be followed by a period.

ligation to purchase electric energy from a qualifying cogeneration facility or a qualifying small power production facility under this section if the Commission finds that the qualifying cogeneration facility or qualifying small power production facility has nondiscriminatory access to—

(A)(i) independently administered, auction-based day ahead and real time wholesale markets for the sale of electric energy; and (ii) wholesale markets for long-term sales of capacity and electric energy; or

(B)(i) transmission and interconnection services that are provided by a Commission-approved regional transmission entity and administered pursuant to an open access transmission tariff that affords nondiscriminatory treatment to all customers; and (ii) competitive wholesale markets that provide a meaningful opportunity to sell capacity, including long-term and short-term sales, and electric energy, including long-term, short-term and real-time sales, to buyers other than the utility to which the qualifying facility is interconnected. In determining whether a meaningful opportunity to sell exists, the Commission shall consider, among other factors, evidence of transactions within the relevant market; or

(C) wholesale markets for the sale of capacity and electric energy that are, at a minimum, of comparable competitive quality as markets described in subparagraphs (A) and (B).

**(2) Revised purchase and sale obligation for new facilities**

(A) After August 8, 2005, no electric utility shall be required pursuant to this section to enter into a new contract or obligation to purchase from or sell electric energy to a facility that is not an existing qualifying cogeneration facility unless the facility meets the criteria for qualifying cogeneration facilities established by the Commission pursuant to the rulemaking required by subsection (n) of this section.

(B) For the purposes of this paragraph, the term ''existing qualifying cogeneration facility'' means a facility that—

(i) was a qualifying cogeneration facility on August 8, 2005; or

(ii) had filed with the Commission a notice of self-certification, self recertification or an application for Commission certification under 18 CFR 292.207 prior to the date on which the Commission issues the final rule required by subsection (n) of this section.

**(3) Commission review**

Any electric utility may file an application with the Commission for relief from the mandatory purchase obligation pursuant to this subsection on a service territory-wide basis. Such application shall set forth the factual basis upon which relief is requested and describe why the conditions set forth in subparagraph (A), (B), or (C) of paragraph (1) of this subsection have been met. After notice, including sufficient notice to potentially affected qualifying cogeneration facilities and qualifying small power production facilities,

and an opportunity for comment, the Commission shall make a final determination within 90 days of such application regarding whether the conditions set forth in subparagraph (A), (B), or (C) of paragraph (1) have been met.

**(4) Reinstatement of obligation to purchase**

At any time after the Commission makes a finding under paragraph (3) relieving an electric utility of its obligation to purchase electric energy, a qualifying cogeneration facility, a qualifying small power production facility, a State agency, or any other affected person may apply to the Commission for an order reinstating the electric utility's obligation to purchase electric energy under this section. Such application shall set forth the factual basis upon which the application is based and describe why the conditions set forth in subparagraph (A), (B), or (C) of paragraph (1) of this subsection are no longer met. After notice, including sufficient notice to potentially affected utilities, and opportunity for comment, the Commission shall issue an order within 90 days of such application reinstating the electric utility's obligation to purchase electric energy under this section if the Commission finds that the conditions set forth in subparagraphs (A), (B) or (C) of paragraph (1) which relieved the obligation to purchase, are no longer met.

**(5) Obligation to sell**

After August 8, 2005, no electric utility shall be required to enter into a new contract or obligation to sell electric energy to a qualifying cogeneration facility or a qualifying small power production facility under this section if the Commission finds that—

(A) competing retail electric suppliers are willing and able to sell and deliver electric energy to the qualifying cogeneration facility or qualifying small power production facility; and

(B) the electric utility is not required by State law to sell electric energy in its service territory.

**(6) No effect on existing rights and remedies**

Nothing in this subsection affects the rights or remedies of any party under any contract or obligation, in effect or pending approval before the appropriate State regulatory authority or non-regulated electric utility on August 8, 2005, to purchase electric energy or capacity from or to sell electric energy or capacity to a qualifying cogeneration facility or qualifying small power production facility under this Act (including the right to recover costs of purchasing electric energy or capacity).

**(7) Recovery of costs**

(A) The Commission shall issue and enforce such regulations as are necessary to ensure that an electric utility that purchases electric energy or capacity from a qualifying cogeneration facility or qualifying small power production facility in accordance with any legally enforceable obligation entered into or imposed under this section recovers all prudently incurred costs associated with the purchase.

(B) A regulation under subparagraph (A) shall be enforceable in accordance with the

provisions of law applicable to enforcement of regulations under the Federal Power Act (16 U.S.C. 791a et seq.).

**(n) Rulemaking for new qualifying facilities**

(1)(A) Not later than 180 days after August 8, 2005, the Commission shall issue a rule revising the criteria in 18 CFR 292.205 for new qualifying cogeneration facilities seeking to sell electric energy pursuant to this section to ensure—

(i) that the thermal energy output of a new qualifying cogeneration facility is used in a productive and beneficial manner;

(ii) the electrical, thermal, and chemical output of the cogeneration facility is used fundamentally for industrial, commercial, or institutional purposes and is not intended fundamentally for sale to an electric utility, taking into account technological, efficiency, economic, and variable thermal energy requirements, as well as State laws applicable to sales of electric energy from a qualifying facility to its host facility; and

(iii) continuing progress in the development of efficient electric energy generating technology.

(B) The rule issued pursuant to paragraph (1)(A) of this subsection shall be applicable only to facilities that seek to sell electric energy pursuant to this section. For all other purposes, except as specifically provided in subsection (m)(2)(A) of this section, qualifying facility status shall be determined in accordance with the rules and regulations of this Act.

(2) Notwithstanding rule revisions under paragraph (1), the Commission's criteria for qualifying cogeneration facilities in effect prior to the date on which the Commission issues the final rule required by paragraph (1) shall continue to apply to any cogeneration facility that—

(A) was a qualifying cogeneration facility on August 8, 2005, or

(B) had filed with the Commission a notice of self-certification, self-recertification or an application for Commission certification under 18 CFR 292.207 prior to the date on which the Commission issues the final rule required by paragraph (1).

(Pub. L. 95–617, title II, §210, Nov. 9, 1978, 92 Stat. 3144; Pub. L. 96–294, title VI, §643(b), June 30, 1980, 94 Stat. 770; Pub. L. 99–495, §8(a), Oct. 16, 1986, 100 Stat. 1249; Pub. L. 101–575, §2, Nov. 15, 1990, 104 Stat. 2834; Pub. L. 109–58, title XII, §1253(a), Aug. 8, 2005, 119 Stat. 967.)

REFERENCES IN TEXT

The Federal Power Act, referred to in subsecs. (e), (h), (j)(1), and (m)(7)(B), is act June 10, 1920, ch. 285, 41 Stat. 1063, as amended, which is classified generally to this chapter (§791a et seq.). Part I of the Federal Power Act is classified generally to subchapter I (§791a et seq.) of this chapter. Part II of the Federal Power Act is classified generally to this subchapter (§824 et seq.). For complete classification of this Act to the Code, see section 791a of this title and Tables.

The Public Utility Holding Company Act, referred to in subsec. (e), probably means the Public Utility Holding Company Act of 1935, title I of act Aug. 26, 1935, ch. 687, 49 Stat. 803, as amended, which was classified generally to chapter 2C (§79 et seq.) of Title 15, Commerce and Trade, prior to repeal by Pub. L. 109–58, title XII, §1263, Aug. 8, 2005, 119 Stat. 974. For complete classification of this Act to the Code, see Tables.

The Electric Consumers Protection Act of 1986, referred to in subsec. (j)(1), is Pub. L. 99–495, Oct. 16, 1986, 100 Stat. 1243. For complete classification of this Act to the Code, see Short Title of 1986 Amendment note set out under section 791a of this title and Tables.

This Act, referred to in subsecs. (m)(6) and (n)(1)(B), is Pub. L. 95–617, Nov. 9, 1978, 92 Stat. 3117, as amended, known as the Public Utility Regulatory Policies Act of 1978. For complete classification of this Act to the Code, see Short Title note set out under section 2601 of this title and Tables.

CODIFICATION

Section was enacted as part of the Public Utility Regulatory Policies Act of 1978, and not as part of the Federal Power Act which generally comprises this chapter.

August 8, 2005, referred to in subsec. (n)(1)(A), was in the original "the date of enactment of this section", which was translated as meaning the date of enactment of Pub. L. 109–58, which enacted subsecs. (m) and (n) of this section, to reflect the probable intent of Congress.

AMENDMENTS

2005—Subsecs. (m), (n). Pub. L. 109–58 added subsecs. (m) and (n).

1990—Subsec. (e)(2). Pub. L. 101–575 inserted "(other than a qualifying small power production facility which is an eligible solar, wind, waste, or geothermal facility as defined in section 3(17)(E) of the Federal Power Act)" after first reference to "facility".

1986—Subsecs. (j) to (l). Pub. L. 99–495 added subsecs. (j) and (k) and redesignated former subsec. (j) as (l).

1980—Subsec. (a). Pub. L. 96–294, §643(b)(1), inserted provisions relating to encouragement of geothermal small power production facilities.

Subsec. (e)(1). Pub. L. 96–294, §643(b)(2), inserted provisions relating to applicability to geothermal small power production facilities.

Subsec. (e)(2). Pub. L. 96–294, §643(b)(3), inserted provisions respecting a qualifying small power production facility using geothermal energy as the primary energy source.

EFFECTIVE DATE OF 1986 AMENDMENT

Section 8(b) of Pub. L. 99–495 provided that:

"(1) Subsection (j) of section 210 of the Public Utility Regulatory Policies Act of 1978 (as amended by subsection (a) of this section) [16 U.S.C. 824a–3(j)] shall apply to any project for which benefits under section 210 of the Public Utility Regulatory Policies Act of 1978 are sought and for which a license or exemption is issued by the Federal Energy Regulatory Commission after the enactment of this Act [Oct. 16, 1986], except as otherwise provided in paragraph (2), (3) or (4) of this subsection.

"(2) Subsection (j) shall not apply to the project if the application for license or exemption for the project was filed, and accepted for filing by the Commission, before the enactment of this Act [Oct. 16, 1986].

"(3) Paragraphs (1) and (3) of such subsection (j) shall not apply if the application for the license or exemption for the project was filed before the enactment of this Act [Oct. 16, 1986] and accepted for filing by the Commission (in accordance with the Commission's regulations and procedures in effect on January 1, 1986, including those relating to the requirement for environmental consultation) within 3 years after such enactment.

"(4)(A) Paragraph (3) of subsection (j) shall not apply for projects where the license or exemption application was filed after enactment of this Act [Oct. 16, 1986] if, based on a petition filed by the applicant for such project within 18 months after such enactment, the Commission determines (after public notice and opportunity for public comment of at least 45 days) that the applicant has demonstrated that he had committed (prior to the enactment of this Act) substantial monetary resources directly related to the development of

*Gregory R. Swecker, et al. v. FERC*          **D.C. Cir. No. 17-5208**

## CERTIFICATE OF SERVICE

In accordance with Fed. R. App. P. 25(d), and the Court's Administrative

Order Regarding Electronic Case Filing, I hereby certify that I have, this 10th day

of October 2018, served the foregoing upon the individuals listed in the Court's

CM/ECF system or, where applicable, by U.S. Mail.

*/s/ Anand R. Viswanathan*
Anand R. Viswanathan
Attorney

Federal Energy Regulatory
   Commission
888 First Street, NE
Washington, D.C. 20426
Telephone: (202) 502-6537
Fax: (202) 273-0901
Email: anand.viswanathan@ferc.gov